# Exhibit 11

# 8/05 Email From Wallick Children

REDACTED

REDACTED

-----Original Message-----
From: SBlumenthal@williamsmullen.com [mailto:SBlumenthal@williamsmullen.com]
Sent: Tuesday, August 16, 2005 3:52 PM
To: Barba, Thomas
Cc: Wellington, Peter
Subject: FW: Question concerning Postnuptual Agreement

Dear Tom,

Attached is an e-mail from Rob Wallick in which he questions the inapplicability of the Wallick's Postnuptial Agreement to the determination of the beneficiary designations of the Steptoe pension plans. It would seem that since Steptoe, with Shep Abell's advice, has addressed these issues, it would be appropriate for Steptoe to address Rob's concerns as well.

Thanks very much.

Best regards,
Susan

-----Original Message-----
From: John Wallick [mailto:johnrwallick@yahoo.com]

1

Sent: Tuesday, August 16, 2005 2:28 PM
To: pwellington@steptoe.com; sblumenthal@williamsmullen.com
Cc: RobWallick@comcast.net; JohnRWallick@yahoo.com; jenniferwnelson@sbcglobal.net
Subject: Question concerning Postnuptual Agreement


Peter/Susan,

Attached is a document outlining several case studies concerning how the courts have viewed a Postnuptial Agreement as far as it being a legal and enforceable binding contract between marital partners. These cases seem to be somewhat similar to our situation and I am a little confused as to why Steptoe did not weigh this into their decision concerning how they are planning on handling my father's pension plan along with his life insurance. I am a little confused as to why his postnuptial agreement seems to have no bearing on any of these decisions.

John


---

Start your  <http://us.rd.yahoo.com/evt=34442/*http://www.yahoo.com/r/hs> day with Yahoo! - make it your home page

PRELIMINARY LEGAL RESEARCH – Pre/Postnuptial Agreements
Validity and Enforceability, ERISA Applicability

Source: http://www.rbs2.com/dcontract.pdf

Lipic v. Lipic, 103 S.W.3d 144, 149 (Mo.App. E.D., Jan 28, 2003).
With the legal unity of husband and wife abolished by either statute or common law in most states of the USA sometime before 1950, there became no continuing good reason to treat postnuptial contracts differently from prenuptial contracts. Thus husbands and wives are able to legally enter into binding, enforceable contracts with each other, such as postnuptial contracts.

Please note, however, that Postnuptial Agreements are given some additional legal strength and enforceability, because Postnuptial Agreements originate after a couple is married, hence both signatories are entering into the contractual agreement as knowing, willful, separable, distinct, full-spouses, and able-to-contract-with-each-other parties.

Definitional notes: Antenuptial (before-nuptial since "ante" means "before") contracts are equivalent to prenuptial contracts. ERISA stands for Employee Retirement Income Security Act (retirement plans), its reference or applicability is toward retirement plans.

The Florida Supreme Court in 1972, speaking of a prenuptial contract, said:
We reiterate that inadequate and disproportionate provision for the wife, even to the extent evidenced in the instant case, will not vitiate (make faulty or defective) an antenuptial (or hence postnuptial) agreement. If the prospective wife (or existing wife in the case of a postnuptial agreement) has full knowledge of her rights, and in the absence of willful or unintentional fraud, or the withholding of material facts, she is not entitled to a greater share of her husband's wealth.

Freedom to contract includes freedom to make a bad bargain.
Posner v. Posner, 257 So.2d 530, 534-35 (Fla. 1972).

**Application to Wallick case**: If the Postnuptial Agreement puts Ann Wallick at having made a bad bargain, it does not nullify the Postnuptial Agreement or insubstantiate that agreement. Please note on the Wallick Postnuptial Agreement, page 2, bottom paragraph, Ann Wallick agrees that, "by entering into this Agreement, they each will relinquish rights which each of them would otherwise have with respect to the property and estate of the other and with respect to their jointly-owned property," and "this Agreement has been negotiated by the parties freely and voluntarily."

The Florida Supreme Court in 1987 said:
… the fact that one party to the agreement apparently made a bad bargain is not a sufficient ground, by itself to vacate or modify a settlement agreement. The critical test in determining the validity of marital agreements is whether there was fraud or overreaching on one side, or, assuming unreasonableness, whether the challenging spouse did not have adequate knowledge of the marital property and income of the parties at the time the agreement was reached. A bad fiscal bargain that appears unreasonable can be knowledgeably entered into for reasons other than insufficient knowledge of assets and income. There may be a desire to leave the marriage for reasons unrelated to the parties'

# PRELIMINARY LEGAL RESEARCH – Pre/Postnuptial Agreements
## Validity and Enforceability, ERISA Applicability

fiscal position. If an agreement that is unreasonable is freely entered into, it is enforceable. Courts, however, must recognize that parties to a marriage are not dealing at arm's length, and, consequently, trial judges must carefully examine the circumstances to determine the validity of these agreements.
Casto v. Casto, 508 So.2d 330, 334 (Fla. 1987).

Wallick specific note, with respect to satisfying the critical test of determining full-disclosure and validity: This is the reason the all the various marital properties, real estate, personal and financial, are all listed in the Postnuptial Agreement, reference its exhibits.

The Iowa Supreme Court in 1996 held that a prenuptial contract was enforceable.
     Our liberal test of substantive fairness combined with the requirement of a knowing and voluntary waiver strikes a proper balance between the two competing interests at stake. First we are sensitive to the traditional desire to protect the party waiving valuable property rights from doing so without a full knowledge and understanding of the import of his or her actions. On the other hand, we must respect the right of competent persons to contract as they wish. Under the test stated above, Iowa courts will not be called upon to judge the moral fairness of the agreement and in doing so, assume the role of guardian for one of the parties.
In re Marriage of Spiegel, 553 N.W.2d 309, 316 (Iowa 1996).

There are three distinct types of postnuptial contracts in the USA:
1. Contracts that assign property at the death of one spouse, thus formally waiving the right of the surviving spouse to take property under a will or under a statute specifying inheritance,
2. separation agreements that settle divorce litigation and avoid a trial and
3. contracts that attempt to affect rights at a future divorce.

**Courts in many states routinely enforce the first two types of postnuptial contracts.** In the case of the **Wallick Postnuptial**, it **is enforceable** since it assigns property at the death of the spouse, Robert. Courts in Wash., D.C. will enforce Postnuptial Agreements.

Source: http://www.modernbride.com/styles/?ww_2ndmbm0301.html
**"A prenuptial agreement is very common with second marriages,"** says Sanford Ain, a senior partner specializing in family law at Sherman, Meehan, Curtin & Ain in Washington, D.C. "Having been down the aisle once before, couples realize how expensive it is both financially and emotionally to unwind a relationship," he says.

Source: http://www.bpwusa.org/i4a/pages/Index.cfm?pageid=3812
Prenuptial agreements have gained considerable acceptance and may make particular sense in second marriages (especially if there are children of prior marriages).
Claudia A. Pott is a partner at Sherman, Meehan, Curtin & Ain, P.C., in Washington, D.C. Her practice focuses on family law and estate planning. Her email address is cpott@smcalaw.com.

# PRELIMINARY LEGAL RESEARCH – Pre/Postnuptial Agreements
## Validity and Enforceability, ERISA Applicability

Source for the following case study:
http://www.aspenpublishers.com/contentsamplep.asp#Anchor-March-6296
March 20, 2002
Prenuptial Agreement Did Not Satisfy ERISA's Requirements For Waivers: Fourth Circuit

The Fourth Circuit U.S. Court of Appeals has ruled that a prenuptial agreement did not satisfy ERISA's requirements for a spousal waiver of survivor benefits. The ruling came in **Hagwood, et al. v. Newton, et al.** (No. 01-1909).

Toni Odom and Charles Newton met in 1983 while they both were employed as line workers for BellSouth Corporation, and both were participants in BellSouth's employee stock ownership plan and its savings plan. A few months after they met, Ms. Odom and Mr. Newton began living together. Then, in 1987, Ms. Odom named Mr. Newton as her beneficiary under BellSouth's savings plan, but she did not name a beneficiary under the company's ESOP.

In 1995, Ms. Odom and Mr. Newton decided to get married. Because Ms. Odom wanted to ensure that some of her stock holdings would be passed on to her father for his care, she and Mr. Newton agreed to sign a formal premarital agreement drawn up by an attorney. The agreement specified that "all separately owned property and the income from it" belonging to each of Ms. Odom and Mr. Newton would remain his or her separate property regardless of the marriage. The agreement explicitly referred to "any stocks, bonds, employee savings and security plans, and retirement accounts"; and Mr. Newton specifically waived any rights that he had in Ms. Odom's "employee savings and security plans and retirement accounts." However, the agreement did not mention by name the BellSouth ESOP and savings plan, and **neither party included language designating a beneficiary for individually owned property.**

In 1996, Ms. Odom began experiencing symptoms of the disease commonly known as "mad cow's disease," which is a rare, fatal brain disorder that causes rapid, progressive dementia and associated neuromuscular problems. After her illness had been miss-diagnosed as a mental illness, Ms. Odom was treated in several hospitals. By September 1997, doctors reported that Ms. Odom was confused and delusional. During this period, Mr. Newton had Ms. Odom execute a power of attorney giving him full power to act in her name. Then, on Jan. 12, 1998, Mr. Newton exercised the power of attorney to designate himself as the beneficiary under the BellSouth ESOP and savings plan. Ms. Odom died two weeks later.

Estate Files Lawsuit

Subsequently, Ms. Odom's estate filed suit against Mr. Newton in the U.S. District Court for the Eastern District of North Carolina, seeking to enforce the terms of the premarital agreement and reverse Mr. Newton's designation of himself as the beneficiary of Ms. Odom's ESOP and savings plan accounts. To that end, the estate sought a declaratory judgment and the imposition of a constructive trust over Mr. Newton's interest in the

PRELIMINARY LEGAL RESEARCH – Pre/Postnuptial Agreements
Validity and Enforceability, ERISA Applicability

ESOP and savings plan. Mr. Newton countered by requesting a declaratory judgment that he was "the proper and legal beneficiary under the BellSouth employee benefit plans." The district court agreed with Mr. Newton and granted summary judgment in his favor. The estate appealed, but the Fourth Circuit affirmed the district court's ruling.

In rendering its decision, the Fourth Circuit initially cited ERISA Sec. 105(c)(2)(A), which prescribes the requirements for a spousal waiver of survivor benefits. According to the court, for Mr. Newton to have validly waived his spousal rights under ERISA, he must have executed a waiver in writing, witnessed by a plan representative, in which he designated a beneficiary other than himself and acknowledged that he was giving up the rights conferred on him by ERISA. The court then added that both BellSouth's ESOP and savings plan contained language reflecting those waiver requirements.

The Fourth Circuit went on to explain, "The question presented in this case is whether the premarital agreement signed by Newton and Odom fulfills the waiver requirements of ERISA and the two plans. ①**"In finding that the premarital agreement did not satisfy ERISA's requirements, the court explained, "When Newton signed the premarital agreement, he did not possess the spousal rights conferred on him by [ERISA Sec. 105(a)]. He was not Odom's spouse and therefore could not satisfy the requirement of section 105(c) that 'the spouse of the participant consent in writing to such election to waive.'** Although Newton clearly indicated in the premarital agreement that he intended to and indeed would waive such rights when he became married, he did not, after he became married, execute a formal waiver giving up the spousal rights that he then acquired. As a result Newton, as a spouse, never provided the written consent required by [ERISA Sec. 105(c)] and by the language of the plans themselves."

According to the Fourth Circuit, ②**"Our second reason for concluding that the premarital agreement in this case did not satisfy [ERISA Sec. 105(c)] is that the agreement did not 'designate a beneficiary' for the survivor benefits as required by [ERISA Sec. 105(c)(2)(A)(i)].** In order to ensure that a surviving spouse clearly understand that he or she will not be the beneficiary designated by ERISA, ERISA requires that the surviving spouse actually designate another beneficiary. The premarital agreement did not satisfy this requirement. Because the premarital agreement between Odom and Newton did not meet ERISA's requirements for a waiver of spousal rights, it did not operate as a valid waiver of those rights."

**Wallick Postnuptial Agreement specific notes:**
①**Please note that the Wallick Postnuptial Agreement avoids entirely the problem with the Newton-Odom premarital agreement and case above, because Ann Wallick, being married to Robert Wallick did possess full spousal rights at the time of her signature, with respect to the postnuptial agreement and ERISA requirement. This is wholly contrary to and legally much stronger than the Newton-Odom case.**

Furthermore, with respect to satisfying [ERISA Sec. 105©] that a beneficiary be named:
②In **Robert D. Wallick's Last Will and Testament** (page 7, top paragraph), Mr.

PRELIMINARY LEGAL RESEARCH – Pre/Postnuptial Agreements
Validity and Enforceability, ERISA Applicability

Wallick designates "**a sum equal to the largest amount permitted to pass tax free** of federal estate tax by reason of the **unified credit**, the state death tax credit and any exclusions available **to my estate** for federal estate tax purposes." Thus Mr. Wallick is designating his Unified Credit Trust and Marital Trust as his named beneficiaries for assets in Exhibit A of the Postnuptial Agreement. Furthermore, since Mr. Robert D. Wallick's surviving spouse, Ann Wallick, will be receiving benefits from the Marital Trust, the need to specifically identify an ERISA beneficiary or sign a waiver is satisfied by taking the Postnuptial Agreement and Last Will and Testament as concurrent, simultaneous, satisfactory in their encompassing entireties and therefore legally binding documents. Both documents were signed and effective as of the same date, 8/30/99. The need for a separate spousal waiver under ERISA Sec. 105 would result in legal redundancy and it should therefore not be required.

**Please note that requiring a signed beneficiary form for Steptoe & Johnson's retirement plan would then have resulted in three signatures by Mr. Robert Wallick, clearly something ERISA would and should not require, reference the Federal Paperwork Reduction Act of 1995, U.S. Code Title 44, Chapter 35.**

The Postnuptial Agreement dated 8/30/99 contains Exhibit A, which lists Robert D. Wallick's assets $4,168,413 and includes Steptoe & Johnson LLP retirement accounts in the amount of $2,660,200 and Life Insurance in the amount of $423,513. Thus Mr. Wallick's assets are duly disclosed for his wife, and valid for purposes of enforcing the Postnuptial Agreement itself. The Postnuptial Agreement is signed by Robert D. Wallick, Ann Day Wallick, Carol Rhees (witness) and Gordon Clay (witness). The Postnuptial is notarized by Virginia Smith.

**ERISA requires that a spouse's waiver to pension plan rights be witnessed by a plan representative or a notary public. The Wallick Postnuptial Agreement is witnessed by a Notary Public. It satisfies the ERISA retirement plan witness requirement.**

The Last Will and Testament of Robert D. Wallick is similarly dated 8/30/99 and signed by Robert D. Wallick, Gordon M. Clay, Carol A. Rhees and Christie A. Walser. It is a legally binding contract and enforceable as the deceased person's last will and intentions.