IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER L. DODGE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| STEPTOE & JOHNSON, LLP PROFIT | ) |
| SHARING PLAN FOR CLASS O | ) |
| EMPLOYEES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

Civil Action No.  1:06CV01368
Judge:  Reggie B. Walton

**MOTION OF PLAINTIFFS TO DISMISS COUNTERCLAIM
IN INTERPLEADER**

COME NOW plaintiffs Christopher L. Dodge, in his fiduciary and individual capacities,

and Jonathan F. Dodge (hereinafter sometimes as the "Plaintiffs" or the "Dodges"), by and

through the undersigned counsel, and for their Motion to Dismiss the Counterclaim in

Interpleader, state as follows:

1.     The claim brought by the Dodges herein is based upon the denial of ERISA plan

benefits through inaction on the part of the plan administrators.  The jurisdiction of this action

arises out of the ERISA civil enforcement statute, Title 29 United States Code, Section 1132.

2.     The Counterclaim in Interpleader has no jurisdictional basis within the ERISA

civil enforcement statute, which is the exclusive basis for federal jurisdiction in ERISA matters.

3.     The Counterclaim in Interpleader should be dismissed pursuant to Civil Rule of

Civil Procedure 12(b)(1), as there is no proper jurisdictional basis for such counterclaim.

4.      Defendants' proposed joining of additional parties under its Counterclaim in Interpleader would necessarily delay these proceedings and substantially increase the costs of this action for the Plaintiffs.

5.      The attempt to interplead on the part of the plan fiduciaries, being Counterclaim plaintiffs Paul Kruse and Steptoe & Johnson, LLP, is done for the primary purpose of benefitting the plan fiduciaries, and is therefore contrary to their duties under ERISA, which is to act for the sole benefit of ERISA plan participants and their beneficiaries.  The plan fiduciaries herein have consistently failed to act in the best interests of plan participants and their beneficiaries by ignoring benefits claims that were properly before them on behalf of Ann Day Wallick and, after her death, the Plaintiffs herein.

6.      The Plaintiffs respectfully refer the Court to the attached Memorandum of Points and Authorities in support of their motion.

Respectfully submitted,

BORING & PILGER, P.C.


/s/ Karl W. Pilger

Karl W. Pilger (Bar #941955)
307 Maple Avenue West, Suite D
Vienna, Virginia   22180-4307
Phone: (703) 281-2161
Fax:    (703) 281-9464
*Counsel for Christopher L. Dodge,*
*Personal Representative of the Estate of*
*Ann Day Wallick, and individually;*
*Counsel for Jonathan F. Dodge*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2006, a true and accurate copy of the foregoing Motion of Plaintiffs to Dismiss Counterclaim in Interpleader was served via electronic transmission upon:

Karla Grossenbacher, Esq.
Seyfarth Shaw LLP
815 Connecticut Avenue, N.W., Suite 500
Washington, DC   20006-4004

and via first-class mail, postage prepaid, upon:

David E. Constine, III, Esq.
Troutman Sanders LLP
P.O. Box 1122
Richmond, VA   23218-1122

William E. Davis, Esq.
Ross, Marsh & Foster
2001 L Street, NW, Suite 400
Washington, DC   20036

Susan G. Blumenthal, Esq.
Williams Mullen
1666 K Street, Suite 1200
Washington, DC   20036

/s/ Karl W. Pilger
Karl W. Pilger

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHRISTOPHER L. DODGE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:06CV01368 |
| | ) | Judge:  Reggie B. Walton |
| STEPTOE & JOHNSON, LLP PROFIT | ) | |
| SHARING PLAN FOR CLASS O | ) | |
| EMPLOYEES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION
OF PLAINTIFFS TO DISMISS COUNTERCLAIM IN INTERPLEADER**

Plaintiffs Christopher L. Dodge and Jonathan F. Dodge, by and through the undersigned

counsel, hereby submit their memorandum of points and authorities in support of their Motion to

Dismiss the Counterclaim in Interpleader.

**I.    FACTUAL BACKGROUND**

Robert D. Wallick was a partner of Steptoe & Johnson, LLP ("Steptoe") until his death

on December 26, 2004.  Mr. Wallick was a former managing partner of that law firm.  At the

time of his death, Mr. Wallick was a plan participant in three ERISA benefit plans that are the

subject of this litigation.  Two of them, the Class O Plan and the Cash or Deferred Plan, are profit

sharing plans.  The third is a life insurance plan providing life insurance benefits upon death.

Plaintiffs will refer to such plans collectively as the "Plans."

At the time of his death, Mr. Wallick was married to Ann Day Wallick, his wife of some

35 years.  Mrs. Wallick had two children from her previous marriage, Christopher L. Dodge and

Jonathan F. Dodge, the Plaintiffs herein.  Mr. Wallick had three children from a previous marriage (the "Wallick Children").

### A.    Mrs. Wallick Submits Her Claims under the ERISA Plans.

As is required by ERISA,[1] each of the Plans herein has a stated procedure by which claims are made by plan participants or their beneficiaries.[2]

The Steptoe & Johnson, LLP Profit Sharing Plan for Class O Employees ("Class O Plan") is one of the profit sharing plans in which Robert D. Wallick participated.  In accordance with the requirements of ERISA, the Class O Plan is operated under plan documents, which include the Steptoe & Johnson, LLP Profit Sharing Plan and Trust Agreement for Class O Employees ("Plan and Trust Agreement") and its Summary Plan Description ("SPD").  The plan administrator of the Class O Plan has the power and duty to administer the Class O Plan "with respect to the amount, manner, and time of payment to any benefits to which any Participant or Beneficiary may be entitled hereunder."  Plan and Trust Agreement, § 4.3 at p. 15.  *See* Exhibit 1, attached.

The SPD for the Class O Plan specifies that "Any claim for benefits under the Plan shall be filed with the Administrator."  SPD § M-1 at p. 13.  *See* Exhibit 2, attached.  The plan administrator is required to provide written notification of any claim denial within 90 days following receipt of the claim.  Id.  The SPD provides that if a claim is denied or ignored, the plan participant or beneficiary may file suit in court.  SPD, § N-1 at p. 16.  *See* Exhibit 3,

---

[1] Title 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

[2] Persons who participate in ERISA plans, such as Mr. Wallick are deemed "plan participants" under ERISA, Title 29 U.S.C. § 1002(7); persons who have the right to benefit from an ERISA plan, who are not themselves plan participants, are deemed "beneficiaries." Title 29 U.S.C. § 1002(8).  In this case, Ann Day Wallick, while not a participant herself, submitted her claims to the plans as a beneficiary.

attached.  Defendant Paul Kruse, as the chief operating officer of Steptoe & Johnson, LLP, is the

designated plan administrator of the Class O Plan.  SPD, § B-3 at p. 2.  *See* Exhibit 4, attached.

On or about September 20, 2005, Ann Day Wallick submitted a written claim for benefits

under the Class O Plan with the plan administrator of such plan.  *See* Exhibit 9 to Defendants'

Motion for Joinder of Additional Parties.  Since that time, the plan administrator, defendant Paul

Kruse, has taken no action upon Mrs. Wallick's claim for benefits.  No written denial of benefits

was ever sent by the plan administrator, and no payment of any benefits was made.

Ann Day Wallick died on May 15, 2006, nearly eight months after submitting her claim

for benefits to the plan administrator of the Class O Plan.  The Plaintiffs herein succeed to her

interests in the Class O Plan, either as beneficiaries of her estate or through a beneficiary

designation submitted by Mrs. Wallick to the plan administrator before her death.  To date, the

plan administrator of the Class O Plan has never acted on the claim for benefits submitted by

Mrs. Wallick.

The facts concerning the Steptoe & Johnson, LLP Cash or Deferred Profit Sharing Plan

("Cash or Deferred Plan") are the same.  The plan administrator of that plan, defendant

Paul Kruse, has the same duties and responsibilities as are specified under the Class O Plan.

Steptoe & Johnson, LLP Cash or Deferred Profit Sharing Plan and Trust Agreement ("Plan and

Trust Agreement"), § 4.1 at p. 15.  *See* Exhibit 5, attached.  The claims procedures set forth in

the SPD for the Cash or Deferred Plan are the same as those for the Class O Plan.  Cash or

Deferred Plan SPD pp. 17- 20.  *See* Exhibit 6, attached.

Ann Day Wallick made a claim for benefits under the Cash or Deferred Plan on the same

form that was used for the Class O Plan.  Mrs. Wallick died without receiving any benefits under

the Cash or Deferred Plan and without receiving any explanation or written denial letter setting

forth the reasons for the failure to provide benefits.

The Steptoe & Johnson, LLP Group Life Insurance Plan ("Life Insurance Plan") is an

insured benefit plan under ERISA. Mrs. Wallick made a claim for the life insurance benefits to

the Life Insurance Plan's insurer, as is required under the SPD for that plan. No benefits have

been paid under the Life Insurance Plan, and no written denial of the claim has been received.

The plan administrator designated in the SPD is Steptoe & Johnson, LLP, and it has full powers

of plan administration according to the SPD. *See* Exhibit 7, attached.

**B.    There are No Other Pending ERISA Claims for These Plan Benefits.**

While the Counterclaim plaintiffs assert that they have received a letter, e-mail, and a

draft complaint from the Wallick children indicating an interest in the plan benefits at issue in

this case, the Counterclaim plaintiffs have not asserted that they have received any ERISA claims

from those parties. The Plaintiffs are likewise unaware that any other person has filed a claim

with the plan administrators in accordance with the plan documents for such plan. Therefore, as

we approach the second anniversary of Robert Wallick's death, the only pending ERISA claims

are those of Ann Day Wallick and her successors in interest, the Plaintiffs herein.

## II.    ARGUMENT

**A.    The Counterclaim in Interpleader Fails for Lack of Subject Matter Jurisdiction.**

1.    The Interpleader Counterclaim Does Not Come Within ERISA's Comprehensive Civil Enforcement Scheme.

The civil enforcement section of ERISA sets forth who can bring actions under the statute

and what kinds of claims can be brought. The civil enforcement statute is found at Title 29,

U.S.C., Section 1132 (sometimes referred to as "ERISA Section 502"). The Plaintiffs herein have brought their action under Section 1132(a)(1)(B), as they are beneficiaries who seek to recover benefits due them under the terms of the plan and to enforce their rights under the terms of the plan.

The counterclaim plaintiffs herein, Paul Kruse and Steptoe, bring their counterclaim as ERISA plan fiduciaries. Counterclaim in Interpleader, introductory paragraph at p. 12. Civil enforcement actions by ERISA fiduciaries are limited to those found and enumerated at Section 1132(a)(3). By the terms of that subsection, a fiduciary may bring an action to enjoin any act or practice that violates any provision of that subchapter of ERISA or the terms of a plan, or to obtain other appropriate equitable relief to address such violations or to enforce a provision of that subchapter of ERISA or the terms of the plan.

The counterclaimants/plan fiduciaries have specified that portion of the civil enforcement statute upon which they rely. They assert that their interpleader action is authorized as "equitable relief by a fiduciary to enforce employee benefit plans' terms under...Section 1132(a)(3)(B)(ii)." Counterclaim in Interpleader at ¶ 4. The proposed interpleader action has no jurisdictional basis under Section 1132 because it does not constitute appropriate equitable relief to enforce any terms of the ERISA plans involved. The counterclaim does not identify any term contained in any ERISA plan that it seeks to enforce through judicial intervention.

The plan administrators could have fully administered the plans simply by granting or denying benefits for which Ann Day Wallick applied. The plan administrators have failed in

5

their fiduciary and administrative duties to make claims determinations,[3] and for that reason, the

Plaintiffs herein have brought an ERISA claim to recover benefits due under the terms of the

plans and to enforce their rights under the terms of the plans.  The Plaintiffs' cause of action

comes clearly within the terms of Section 1132, but the Counterclaim in Interpleader clearly does

not.

A review of the Counterclaim in Interpleader shows the true purpose of the Counterclaim

– to prevent the Plans or the plan administrators from being exposed to double or multiple

liability.  *See* Counterclaim in Interpleader at ¶¶ 35, 41, and 47.  While that may be a very

important consideration to the Steptoe defendants, it does not translate into a basis for subject

matter jurisdiction under Section 1132.[4]

Since the enactment of ERISA, litigants have continuously attempted to have the courts

read into the civil enforcement statute causes of action not contained there and remedies not

contained there.  As stated by the Supreme Court in *Massachusetts Life Insurance Co. v. Russell*,

473 U.S. 134, 146, 105 S.Ct. 3085 (1985),

> The six carefully integrated civil enforcement provisions found in Section 502(a)
> of the statute as finally enacted, however, provide strong evidence that Congress
> did *not* intend to authorize other remedies that it simply forgot to incorporate
> expressly.  The assumption of inadvertent omission is rendered especially suspect
> upon close examination of ERISA's interlocking, interrelated, and interdependent
> remedial scheme, which is in turn part of a 'comprehensive and reticulated

---

[3]  Benefits determinations must be made in writing within 90 days after receipt of the
claim, barring special circumstances.  29 C.F.R. 2560.503-1(f).

[4]  The plan administrators' evident self-interest shown by the Counterclaim in
Interpleader is at odds with ERISA's standard for fiduciaries administering plans.  Such
fiduciaries "shall discharge his duties with respect to a plan solely in the interest of participants
and beneficiaries...".  Title 29 U.S.C. § 1104(a)(1).

statute.' *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361,
100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980) (emphasis in original).

The Supreme Court in *Russell* refused to expand the remedies found in the civil enforcement

statute, saying:

> We are reluctant to tamper with an enforcement scheme crafted with such evident
> care as the one in ERISA.  ...'The presumption that a remedy was deliberately
> omitted from a statute is strongest when Congress has enacted a comprehensive
> legislative scheme including an integrated system of procedures for enforcement.'
> *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S., at 97, 101 S.Ct., at 1583.

*Id*. at 473 U.S. 147.

The plan fiduciaries in this action are asking this Court to determine the Plans' liabilities

for benefit claims through what can be categorized as a "defensive" cause of action, in this case,

an interpleader claim.  Courts that have considered the jurisdictional issue with respect to such

"defensive" claims brought by a fiduciary of an ERISA plan have found subject matter

jurisdiction lacking under Section 1132.

In the case of *Gulf Life Insurance Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987), a plan

participant filed a claim for severance benefits from his former employer, Gulf Life Insurance

Company.  *Id*. at 1522.  Rather than denying Arnold's claim administratively, Gulf Life instead

brought suit in federal district court seeking a declaration of its liability.  *Id*.  Arnold moved to

dismiss on the grounds of lack of personal jurisdiction, *id*., and the court held that Gulf Life

could not maintain the action under Section 1132 of ERISA, since its suit was not one to

"enforce" the terms of the plan.

7

The court reasoned that the suit by Gulf Life was neither one for equitable relief under Section 1132 nor an action to enforce the plan. In concluding that the suit was not one to enforce the plan, the court stated as follows:

> The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties as to whom Congress presumably determined the right to enter federal court was necessary to further the statute's purposes. [citation omitted] Gulf Life's declaratory judgment action simply is unnecessary to further the statute's purpose. The purpose essential to Section 1132(a)(3)(B) is to enforce the terms of the plan or ERISA; all Gulf Life need do to enforce the terms of the plan, assuming it contends the claim for benefits is invalid, is to deny payment. Moreover, *an action 'to enforce' means an action to compel someone to do something or not to do something, such as make contributions, that ERISA or the plan requires to be done or not done.* [citation omitted] Gulf Life's action is defensive in nature; the company simply wishes to avoid making payment that Arnold claims is due. Seeking a declaration of its liability does not 'enforce' the plan. (emphasis supplied).

*Id*. at 1523-24.

> These standing provisions of ERISA must be construed narrowly; civil actions under ERISA are limited only to those parties and actions Congress specifically enumerated in Section 1132.

*Id*. at 1524.

Cases subsequent to *Gulf Life* have focused on the issue of whether an action brought by a fiduciary under Section 1132 is one to "enforce" the terms of a plan. In *Chicago Pneumatic Tool Co. v. Smith*, 890 F. Supp. 100 (N.D.N.Y. 1995), the district court assumed that the declaratory judgment being sought by the plan fiduciary was equitable in nature, thus satisfying one of the requirements of Section 1132(a)(3)(B). The court held that, where the plan's fiduciaries sought a declaration that the amount of pension to be paid to a plan participant was correct, they were not seeking to "enforce" any provision of ERISA or of the pension plan, as Section 1132(a)(3)(B)(ii) requires. *Id*. at 131-32. *See Woods v. Twyman*, 93 C 6373, 1993 WL

8

462849 (N.D. Ill. Nov. 9, 1993) (interpleader action brought by trustees and fiduciaries to clarify identity of proper beneficiary of deceased participant is not one seeking to enforce terms of the plan).

While some of the above cases have examined the question subject matter jurisdiction in the context of a declaratory judgment action, there is no material difference from the present action, which purports to bring an interpleader action. The counterplaintiffs here essentially seek a declaration of who is entitled to plan benefits. Even assuming that interpleader is equitable in nature, the instant action simply is not one to "enforce" the terms of the plan.

2.    Those Decisions Permitting Interpleader in an ERISA Context Have Not Fully Analyzed the Jurisdictional Issue.

The Plaintiffs herein recognize that some circuits have allowed interpleader actions to go forward in an ERISA context. The Plaintiffs respectfully submit that those decisions have omitted the crucial analysis concerning what cases are permitted under Section 1132. *Gulf Life* and its progeny are the better reasoned decisions.

The seminal case permitting interpleader by a fiduciary in ERISA cases is *Metropolitan Life Insurance Co. v. Marsh*, 119 F.3d 415 (6th Cir. 1997). The court in *Marsh* sought to resolve conflicting claims to plan benefits involving the validity of a qualified domestic relations order ("QDRO"). The Sixth Circuit correctly observed that its jurisdiction over ERISA-related questions is defined and limited by ERISA Section 502(a) [29 U.S.C. § 1132(a)]. *Marsh, supra*, at 417. The court went on to examine the issue of standing and subject matter jurisdiction as it applied to Met Life, as the party bringing the interpleader. *Id*. at 418.

9

The court held that Met Life had standing to bring the interpleader claim under Section 1132(a)(3)(B)(ii), because it was a fiduciary and because it found that interpleader was equitable in nature. *Id.* However, the court did not complete the analysis by making a determination that the suit was brought to either "enforce" the terms of the plan or to "enforce" the provisions of ERISA.

Therefore, the analysis of Section 1132 was inadequate and insufficient. Without limiting fiduciary actions under Section 1132(a)(3)(B) to suits to either enforce the terms of the plan or to enforce the terms of ERISA, the *Marsh* decision would open up suits by ERISA fiduciaries to any equitable action of any sort. This would be inconsistent with the narrow and precise reading given to ERISA jurisdiction by the Supreme Court in, for example, *Metropolitan Life v. Russell*, *supra*.

One circuit court, expressly following the decision in *Marsh*, has held that an interpleader action brought by a fiduciary with respect to competing claims does serve to "enforce" the terms of the ERISA plan. *Aetna Insurance Co. v. Bayona*, 223 F.3d 1030 (9th Cir. 2000). The court's reasoning was that "Aetna, as a plan fiduciary, had an obligation to insure proper disbursement of the life insurance policy funds; it brought this action interpleader in order to fulfill that obligation." *Id.* at 1034.

The court in *Bayona* did not make any reference to the *Gulf Life* decision. Likewise, it did not go beyond the above-quoted language in explaining why an interpleader action was necessary to "enforce" the terms of the plan. As pointed out by the court in *Gulf Life*, a plan fiduciary is not without power to enforce the terms of a plan; all it has to do is make a decision on the claim placed before it consistent with the ERISA plan documents.

10

This Court should reject the reasoning in *Marsh* and *Bayona* and adopt the better reasoned decision in *Gulf Life*.  By permitting plan fiduciaries to come into court whenever there is an actual or perceived conflict among possible plan participants or beneficiaries, courts would do violence to the administrative scheme of decision-making under ERISA, as is set forth in more detail below.  Such an outcome would give plan fiduciaries immediate access to the courts whenever they felt their decision making was in doubt, in sharp contrast to the requirement that claimants under an ERISA plan proceed through months of administrative remedies before being permitted to bring their case to court.

3.    Giving Plan Fiduciaries Immediate Access to Courts is Contrary to the Judicially Created Requirement of Exhaustion of Administrative Remedies Under ERISA.

Although ERISA does not contain an explicit provision requiring the exhaustion of administrative remedies, that doctrine has been endorsed by almost every circuit court, including this one.  *See Communications Workers of America v. AT&T*, 40 F.3d 426, 431-32 (D.C. Cir. 1994).  A claimant must exhaust his or her administrative remedies before pursuing a remedy in court.  The exhaustion of administrative remedies is desirable because fully considered actions by plan fiduciaries may assist the courts when they must resolve controversies.  *Powell v. AT&T Communications, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991); *Makar v. Health Care Corp. of the Mid-Atlantic*, 872 F.2d 80, 83 (4th Cir. 1989).

Given the endorsement by the circuit courts to have ERISA claims proceed on an administrative basis until such time as all claims and appeals have been resolved before coming into court, the *Gulf Life* approach to claims by plan fiduciaries should be the preferred approach.  To give plan fiduciaries immediate access to the federal courts whenever they need guidance

11

would give them access that not only does not appear in Section 1132, but would be in stark contrast to the limited access given to claimants as a result of the doctrine of exhaustion of administrative remedies.  Furthermore, it may constitute a waste of judicial resources where there is only a perceived, and not actual, need for judicial guidance.  For example, in the present case, it appears that only Ann Day Wallick has filed an ERISA claim for benefits under the Plans. Counterplaintiffs Kruse and Steptoe, as plan fiduciaries, have not alleged that ERISA claims have actually been filed with them by any other person.  Having plan fiduciaries make claims decisions based on the claims filed with them, rather than bringing an action in court, would be the best and most efficient way to "enforce" the terms of any ERISA plan while minimizing the time and expense given to judicial proceedings.

        4.      <u>The Interpleader Counterclaim Does Not Have Subject Matter Jurisdiction on the Other Bases Asserted by the Plan Fiduciaries.</u>

The plan fiduciaries, Kruse and Steptoe, assert non-ERISA bases for jurisdiction at paragraphs 2, 3, and 5 of the Counterclaim.  The asserted bases of jurisdiction are, respectively, ancillary jurisdiction, the federal interpleader statute, and supplemental jurisdiction.

These asserted bases of jurisdiction ignore the requirement that all claims that relate to ERISA plans must be brought within the scope of the civil enforcement statute, 29 U.S.C. Section 1132.  Even those decisions taking the broadest view of subject matter jurisdiction in interpleader actions, *Metropolitan Life Insurance Co. v. Marsh*, 119 F.3d 415 (6th Cir. 1997) and *Aetna Life Insurance Co. v. Bayona*, 223 F.3d 1030 (9th Cir. 2000), correctly maintain that "Section 502(a) [29 U.S.C. 1132(a)] of ERISA defines and limits federal jurisdiction over ERISA-related matters."  *Bayona* at 1033; *see Marsh* at 418.  The interpleader actions in those

cases were analyzed within the context of Section 1132 as the basis for subject matter jurisdiction; the Plaintiffs are not aware of any decisions that have sustained subject matter jurisdiction in ERISA matters solely upon another federal basis, such as the federal interpleader statute.

In addition, ancillary jurisdiction and supplemental jurisdiction have been vehicles by which state law claims have been permitted to go forward in conjunction with claims having federal court jurisdiction. However, all state law claims relating to ERISA plans are preempted under ERISA's expansive preemption statute, Title 29 U.S.C. § 1144(a).

In short, the counterclaim must fit within the limits of 29 U.S.C. Section 1132 in order to survive dismissal. The Plaintiffs respectfully submit that the counterclaim in interpleader does not "enforce" the terms of the Plans in this case and so does not come within Section 1132. As it is undisputed that the plan fiduciaries have failed to make a decision on the claims submitted by Ann Day Wallick for more than a year, this matter should proceed on the claims submitted by her successors in interest. Since the plan administrators have completely failed in their fiduciary duty to render a decision on claims presented to them, this matter should proceed under the *de novo* standard with respect to the Plaintiffs' entitlement to benefits.

      **B.**     **The Claims of the Plaintiffs Can Be Fully and Fairly Resolved Without Resort to Interpleader or the Joinder of Additional Parties.**

Ann Day Wallick filed claims with the three Plans over a year ago, and the determination of those claims for benefits can be fully adjudicated in the cause of action brought by the Plaintiffs herein. Since the plan administrators did not render decisions on the claims for

benefits within the required time,[5] the claims filed by Mrs. Wallick are deemed denied, and she is deemed to have exhausted her administrative remedies. *See* 29 C.F.R. 2560.501-1(l).

Had the plan administrators herein made a determination on the claims submitted by Mrs. Wallick, their decisions likely would have been reviewed under a deferential standard, given that the Plans grant discretion to the plan administrators to determine claims and take other actions on behalf of the Plans. No decisions having been rendered by the plan administrators, there is nothing for the Court to review with respect to such decisions, and the Court proceeds to determine the claims *de novo*. *See Jebian v. Hewlett-Packard Co.*, 310 F.3d 1173, 1180 (9th Cir. 2002) (deemed denials are not exercises of discretion and do not deserve deference). If the Court determines that the claims are meritorious, then the Court can provide full relief by ordering the plan administrators and the Plans, who are before the Court, to pay the benefits. If the Court determines that the claims are not meritorious, then nothing further need be done.

Bringing in additional parties will only serve to delay these proceedings and increase the costs. The counterclaimants' proposed counterclaim in interpleader would unnecessarily complicate what is only a straightforward claim for pension and life insurance benefits by a plan participant's beneficiaries.

The Plaintiffs are very much concerned that any decision on the merits by this Court based upon the Counterclaim in Interpleader could be attacked in the appellate courts by a party dissatisfied with the outcome in this Court. If the Court of Appeals were to adopt the *Gulf Life* reasoning, rather than the *Marsh* reasoning, then the Plaintiffs might find themselves starting

---

[5] The plan administrators were required to respond to the claim with a written decision within 90 days, absent special circumstances. 29 C.F.R. 2560.503-1(f) and (g).

14

over in this Court after a delay of months or years and expenditure of substantial attorneys' fees and costs. The claim filed in this Court by the Plaintiffs, without the imposition of the Counterclaim in Interpleader, has unassailable subject matter jurisdiction and would serve to fully resolve the claims filed by Mrs. Wallick before her death. Claims for the benefits of these Plans by other persons, assuming they will be filed at all, can proceed through the administrative process and be decided on their merits by the plan administrators. The Plaintiffs also note that the proposal by the plan administrators to bring in additional parties now circumvents the doctrine of exhaustion of administrative remedies with respect to those parties. Assuming they do wish to file claims against these Plans (an assumption not borne out by the facts thus far), they should be subject to exhausting their administrative remedies like any other claimants. This action should proceed independent of their claims, as the Plaintiffs have duly exhausted their administrative remedies and should not have their day in court further delayed by the actions of other parties over whom they have no control.

To the extent that the counterclaimants assert the likelihood of "double or multiple liability", Counterclaim in Interpleader at ¶ 35, such concerns are more illusory than real. If this Court were to grant all of Plaintiffs' claims in this action, no potential for double liability would exist until and unless other parties made a proper claim for benefits by sending them to the plan administrators of the various Plans. If that happened, then the plan administrators could well deny those claims in the proper exercise of a discretion granted to them by the Plans, relying on the fact that a court had properly determined that the Plaintiffs were entitled to the benefits. That exercise of discretion by the plan administrators – assuming it was timely acted upon in accordance with the plan documents – would be given deference in any later judicial

15

determination.  The deference granted to the decisionmaking of the plan fiduciaries, coupled with

a prior judicial decision concerning the benefits, virtually insulates the plan administrators from

the type of harm they claim may exist in the future.

The Plaintiffs believe that another reason the plan administrators have attempted to file an

interpleader is that the plan administrators wish to submit a bond for the amount of benefits and

then apply to be excused from further litigation in this matter.  If so, that would substantially

reduce Plaintiffs' rights with respect to any application for attorneys' fees that they would be

entitled to make.  It is the intention of the Plaintiffs to apply for all of their reasonably incurred

attorneys' fees and costs and have them assessed against the defendants herein pursuant to

29 U.S.C. Section 1132(g).

Finally, resolution of this case does not require the joinder of Unum Life Insurance

Company of America ("Unum") as a party.  Unum is mentioned at paragraph 44 of the

Counterclaim in Interpleader.  Unum is the insurer with respect to the insured life insurance

benefit at issue in this case.

Being the insurer of a plan benefit or even a claims administrator does not make the entity

performing those tasks a proper party defendant in a claim for benefits.  The proper party

defendant in an action concerning ERISA benefits is the party that controls administration of the

plan.  *Garren v. John Hancock Mutual Life Insurance Co.*, 114 F.3d 186, 187 (11th Cir. 1997).  In

that case, the plan administrator was the employer, Georgia-Pacific.  It had exclusive

responsibility and complete discretionary authority to control the operation and administration of

the plan.  *Id*.  John Hancock Mutual Life Insurance Company, which had been sued by the

plaintiff, was the company servicing the ERISA plan, but was found not to be a proper defendant.

16

*Id*.  Where the plan identifies a plan administrator, it is a proper defendant in a claim under

ERISA.  *See McKinsey v. Sentry Insurance*, 986 F.2d 401, 405 (10th Cir. 1993) (claim for ERISA

penalties under Section 1132(c)).

ERISA plans themselves may be sued as an entity, 29 U.S.C. Section 1132(d).  An

ERISA plan remains a proper party defendant even where it has contracted with an insurance

company to pay benefits under the plan to qualified beneficiaries.  *Chapman v. ChoiceCare Long*

*Island Term Disability Plan*, 288 F.3d 506, 509 (2d Cir. 2002).  Therefore, both the plans and the

plan administrators are proper defendants in actions to recover benefits.

The plan administrator of the Life Insurance Plan is Steptoe & Johnson, LLP.  It is given

full discretion and full power to decide and do all things necessary to plan administration.  *See*

Life Insurance Plan SPD at pp. 19 and 23 (Exhibit 7, attached).  If this Court determines that a

benefit should be paid under the Life Insurance Plan, then Steptoe is fully empowered to direct

the insurer to make payment in accordance with this Court's decision.

## III.   CONCLUSION

For all the above reasons, and for such other and further reasons as may be brought to the

attention of the Court, the plaintiffs herein, Christopher L. Dodge and Jonathan F. Dodge, request

that the Court dismiss the Counterclaim in Interpleader, and that they have such other and further

relief as the Court may deem just and proper.

Respectfully submitted,

BORING & PILGER, P.C.


/s/ Karl W. Pilger
_____
Karl W. Pilger (Bar #941955)
307 Maple Avenue West, Suite D
Vienna, Virginia   22180-4307
Phone: (703) 281-2161
Fax:    (703) 281-9464
*Counsel for Christopher L. Dodge,*
*Personal Representative of the Estate of*
*Ann Day Wallick, and individually;*
*Counsel for Jonathan F. Dodge*


## REQUEST FOR HEARING

Plaintiffs Christopher L. Dodge and Jonathan F. Dodge respectfully request oral argument with respect to this motion.


/s/ Karl W. Pilger
_____
Karl W. Pilger

18

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2006, a true and accurate copy of the foregoing Memorandum of Points and Authorities in Support of the Motion of Plaintiffs to Dismiss Counterclaim in Interpleader was served via electronic transmission upon:

Karla Grossenbacher, Esq.
Seyfarth Shaw LLP
815 Connecticut Avenue, N.W., Suite 500
Washington, DC   20006-4004

and via first-class mail, postage prepaid, upon:

David E. Constine, III, Esq.
Troutman Sanders LLP
P.O. Box 1122
Richmond, VA   23218-1122

William E. Davis, Esq.
Ross, Marsh & Foster
2001 L Street, N.W., Suite 400
Washington, DC   20036

Susan G. Blumenthal, Esq.
Williams Mullen
1666 K Street, Suite 1200
Washington, DC   20036

/s/ Karl W. Pilger
Karl W. Pilger

19