# EXHIBIT 2

1999 Postnuptial Agreement

## POSTNUPTIAL AGREEMENT

THIS AGREEMENT is made and entered into this 30th day of August, 1999, by and between ROBERT D. WALLICK (hereinafter "the Husband") and ANN DAY WALLICK (hereinafter "the Wife"), collectively referred to as the "parties";

WHEREAS, the parties were married on August 22, 1969; and

WHEREAS, the Husband has been previously married and has three adult children of his prior marriage; and

WHEREAS, the Wife has been previously married and has two adult children of her prior marriage; and

WHEREAS, there are no issue of the parties' marriage to each other; and

WHEREAS, the parties wish to enter into this Agreement regarding certain of their property, property rights and interests; and

WHEREAS, while each party has apprised the other of the assets comprising his or her respective estate, as set forth in summary fashion on Exhibit A attached hereto, and each is ready to give the other full information with respect to his or her property and each has satisfied himself or herself with

respect thereto, the parties enter this Agreement not relying on, and without regard to, the accuracy or completeness of the information so disclosed, and acknowledge that they would each enter into this Agreement even if the other's assets were substantially greater or less than has been disclosed; and

WHEREAS, each party understands that the property of the other may be increased in the future by reason of inheritances, trust distributions, and other additions and each acknowledges that he or she would make this Agreement regardless of the value of any such additions; and

WHEREAS, the parties have acquired various items of tangible personal property separately and together and, in order to minimize any possible uncertainty or difficulty for their families, they wish to set forth their agreement and understanding with respect to the ownership and future succession of such property; and

WHEREAS, each party fully understands that, by entering into this Agreement, they each will relinquish rights which each of them would otherwise have with respect to the property and estate of the other and with respect to their jointly-owned property; and

WHEREAS, this Agreement has been negotiated by the parties freely and voluntarily, and each party has had the opportunity to consult independent counsel of his and her choosing; and

WHEREAS, the consideration for this Agreement is based upon the mutual promises and waivers contained herein, and the marriage which was solemnized,

NOW, THEREFORE, in consideration of the mutual covenants contained herein, it is hereby agreed as follows:

1. <u>Tangible Personal Property</u>. Exhibit B attached hereto sets forth three categories of tangible personal property: Part 1 lists items of tangible personal property which the parties agree are separately owned by the Husband; Part 2 lists items of tangible personal property which the parties agree are separately owned by the Wife; and Part 3 lists items of tangible personal which are jointly owned but which the parties wish to benefit all five of their children or their descendants. With respect to the items listed in Parts 1 and 2, the parties agree that, upon the death of a party, his or her separate tangible personal property so listed shall pass to his or her surviving issue, <u>per stirpes</u>, <u>subject, however, to the right of the surviving party to use so much of such property</u>

<u>during his or her lifetime as he or she shall choose.</u>  During any period in which the surviving party retains the use of tangible personal property which belonged solely to the deceased party, he or she shall at his or her own expense maintain adequate insurance on such property, but shall not otherwise be responsible for its loss, damage or destruction and shall not be required to post bond or other security.  With respect to the items of tangible personal property listed in Part 3, the parties agree that such items shall be sold following the death of the surviving party (or if he or she prefers, during his or her lifetime) and the proceeds from such sale shall be divided equally among the parties' then living children; provided, however, that if a child of the parties has died leaving issue who are then living, such child's share of the sales proceeds shall be distributed to his or her then living issue, <u>per stirpes</u>.  Each party agrees that said Exhibit B may be updated from time to time and shall be as effective as if originally attached to this Agreement so long as any updated version is signed and dated by both parties.  All other tangible personal property (other than personal effects and jewelry clearly identifiable as belonging to one of the parties) shall be jointly owned and shall pass upon the death

of the first party to die to the surviving party without restriction. In the event that any share of the property or proceeds will pass to a grandchild of the Husband or Wife, the Survivor may leave such share of the property in trust for such grandchild or to a custodian under the Uniform Transfers to Minors Act as he or she deems appropriate. The parties agree that they shall execute and maintain in effect Last Wills and Testaments and/or revocable trusts bequeathing their tangible personal property (or the net proceeds from the sale thereof) in accordance with the provisions of this paragraph.

2. <u>Waiver of Rights In Each Other's Estates</u>: Both parties waive and relinquish all their respective dower, curtesy and homestead rights or interests, and any and all statutory elective rights or interests of any kind arising upon the death of one or both of the parties, including any community property or quasi-community property rights, as widower or widow of the other, in and to property now owned or hereinafter acquired by the other, and whether provided under existing laws and statutes of the District of Columbia (where both the parties are now domiciled), Florida or any other state, or of any future laws or statutes of the District of Columbia, Florida or any state. Each party also hereby agrees that he or she shall not contest

the validity of any Will of the other party, including any Will existing as of the date of this Agreement and any Will that may hereafter be made, and shall permit any such Will of the other party to be probated and letters testamentary to issue thereon.

3. <u>Control of Separate Property</u>. Except as otherwise provided herein, each party hereto shall have full power and separate control of his or her property acquired in his or her name alone. Each party shall and does have the right to sell, assign, lease, encumber, or otherwise transfer or dispose of his or her real or personal property without the consent, release, or signature of the other party. In the event of sale, transfer or conveyance of any property, whether real or personal, tangible or intangible, now owned or hereafter acquired by either of the parties, if the other party shall be called upon by that party to execute a deed, conveyance, bill of sale or other document of any kind conveying said property or relinquishing any interest in said property, then, in such event, the other party to this Agreement shall sign any document or conveyance which may be necessary to perfect title to the property in a grantee. It is further agreed between the parties that each of them shall and will at any time hereafter make,

execute and deliver any and all such other and further assurances, whether in writing or otherwise, as either of said parties shall reasonably require for the purpose of giving full effect to this Agreement.

4. <u>Governing Law</u>. All matters and questions which may relate to the respective rights of the Husband and Wife, if any, in the estate of the other party, shall be governed by this Agreement and the laws of the District of Columbia where the parties are domiciled and in no event shall the laws of any other jurisdiction have any effect upon such matters or questions.

5. <u>Gifts</u>. No provision of this Agreement shall prevent either party from making a gift to the other party, from making any testamentary provision for the other party, or from nominating or appointing the other party to serve as a fiduciary under his or her Will; and no such gift, testamentary provision or nomination or appointment shall be deemed a waiver of any of the provisions of this Agreement.

6. This instrument sets forth the entire understanding of the parties, and neither party has relied

upon any representation of the other party except such as are specifically mentioned in this Agreement or are in writing and are annexed hereto. This Agreement may not be amended or revoked except by an instrument in writing signed by ROBERT D. WALLICK and ANN DAY WALLICK and mutually acknowledged, expressly modifying or revoking the provisions hereof.

    IN WITNESS WHEREOF, the undersigned have signed this Postnuptial Agreement in quadruplicate on the date set forth above.

WITNESS:

_____    By: _____
                                                Robert D. Wallick

_____    By: _____
                                                Ann Day Wallick

## EXHIBIT A

### Assets owned in the sole name of Robert D. Wallick: (*)

| | |
|---|---|
| Steptoe & Johnson LLP retirement accounts | $2,660,200 |
| IRA's | 30,000 |
| Annuities received from Steptoe & Johnson LLP retirement plans | 102,000/yr |
| Cash Equivalents | 58,000 |
| Paine Webber Securities Accounts | 660,900 |
| Miscellaneous Other Investments | |
|     S&J Capital Account | 195,000 |
|     Putnam Tax-Free Fund | 8,800 |
| Occoquan property (est'd after taxes) | 30,000 |
| Life Insurance | 423,513 |
| Miscellaneous tangible personal property | |

### Assets owned in the joint names of Robert D. Wallick and Ann Day Wallick (estimated values):

2101 Conn. Ave, Apt. 85, Wash, D.C.
    Estimated Value (Appraisal @ 1/4/97)    $570,000
    Less: Share of COOP Mortgage (12/31/98)   (64,000)
        Mortgage from NCB (Est. @ 12/31/98  (196,000)
                                          $ 310,000

10620 Frayne Drive, Windsor, Vero Beach, Fla.
    Cost of land and construction
    (sub. compl. @ 5/97) $1,083,000
    Assessed value for tax purposes           870,000

Subtotal — jointly owned homes           $1,170,000

Windsor Club membership ($65,000 cost;
$75,000 x 80%)                                     60,000

Total — Estimated net value of Real Estate
    and memberships                        $ 1,230,000

(*) Estimated values as at 6/30/99 (or earlier in a few instances).

- 9 -

Assets owned in the sole name of Ann Day Wallick:

Investment values inherited from Mrs. Wallick's parents (approximate value $1 million)
Miscellaneous tangible personal property

- 10 -

### Exhibit B

**Tangible personal property belonging solely to Robert D. Wallick:**

- 1 Painting of General Beall
- 1 Painting of Uncle Sammy
- 1 19th Century Painting of Water between Two Mountains with a Boat
- 1 Oriental Rug from Mr. Wallick's office
- Mr. Wallick's partner's Desk
- Mr. Wallick's leather Sofa
- 1 Mahogany Breakfront
- 1 Pembroke Table
- 1 Crystal Lamp and 1 Bilotte Lamp
- 2 King George III style chairs
- 1 Leather Desk Chair
- Regency Lion Candlesticks *(Ann's — handwritten annotation)*
- 1 Large Silver Pitcher
- Mahogany Federal Mirror with flowers in a bowl decoration
- 1 Small Georgian Chair
- 8 18th Century Prints
- Mahogany Breakfast Table from Breakfast Room
- Small wooden Pantry Table on rollers
- Silver Coffee Service decorated with Chinese Art
- 1 long 4' cane and glass Table
- 2 large Vassareli Prints (1 damaged)
- 2 Globes (world and heavenly)
- Bird Three

**Tangible personal property belonging solely to Ann Day Wallick:**

- Irish Breakfast Table (family)
- 2 Louis XV style Chairs
- 2 large upholstered Armchairs
- 1 large white Sofa
- 1 small Loveseat
- 1 Regency Cocktail Table with a black Tray
- 1 green Chinese Cocktail Table
- 1 round Philippine Inlaid Table
- 1 Almer cherry Lowboy (family)
- 1 gold George II style Mirror
- 6 Fish Prints
- 2 Louis XVI style Chairs (family)
- 1 Chinese garden Stool
- 1 Japanese Box covered by a glass table
- 1 Chinese Basket (side table)
- 1 Italian gold leaf Stool
- 1 Candlestick glass and brass Lamp
- 2 Sangre de boef Lamps
- Louis XV style Andirons decorated with cupids and flames
- 1 17th Century Dutch lady
- 2 Lily prints (1 belladonna, 1 illiem)
- 1 needlepoint yellow Rug

- 11 -

- 1 tall black carved Chest (family)
- 1 Bronze Rhino
- 5 Fish Prints
- 10 white Louis XVI style Chairs
- 18th Century Chinese Sealed Lady Statue
- brown, green and white Rug
- Korean Screen
- plaster Cathedral Ornament
- 2 silver Candelabra (family)
- silver Tea and Coffee Service (Gorham) (family)
- 2 large silver Trays (family)
- white Rosenthal Service (family)
- all China and Glass Plates (family)
- all Flat Silver (family)
- Glass and Steel Etagere (family)
- 24 Bedasoa demi-tasse (family)
- all blue and white china (American, English and Chinese) (family)
- Greek Icon (folding) (family)
- 2 pale blue Chinese export Plates
- 1 Venetian glass Duck (to Ann Bailey)
- 2 Italian Prints (Rome)
- 2 18th Century Views of Spain Prints (Lucarea, Carrea) (family)
- 8 small Salt Cellars
- 3 pairs of silver Salt and Pepper Sets
- Small silver Pitcher (family)
- 6 Small silver Sellers (family)
- Regency Library Table
- Coramandel Chinese Screen
- Sleep Sofa with matching upholstery Armchair
- Butler's table
- Fortuny Table Skirt and Pillows
- 2 copper Lamps and small copper Objects (family)
- all Prints on walls (American-Bacon, Marin, M. Lewis, etc)
- 2 cane and glass Side Tables
- 1 baroque Spanish Book Holder
- French blue, white, and yellow planter from the early 19th Century
- 2 Chinese export Plates
- 2 Louis XVI style green, gold and terracotta Overdoors (large paintings)
- 2 Goyas (family)
- great-grandfather's cherry drop leaf Table (family)
- Large cherry Chest (family)
- Louis XV style Bergere
- Small oval Tea Table
- French inlaid 19th Century mahogany Desk (family)
- 2 Regency side Chairs (family)
- 2 green glass Lamps (family)
- 2 silver-plated Candlestick Lamps
- 3-part Venetian Dressing Table Mirror
- small oval Mirror from Spain (family)

- small Victorian lady in a red bonnet (family)
- Mompo abstract
- L. Nesbitt Lily (orchid)
- Shelia Isham abstract
- Giraffe Rug
- Giraffe Print
- Louis XVI style Mirror
- 2 Venchian large Armchairs
- 1 Berchere-Cairo Painting (family)
- 2 Aububon Bird Prints
- Green marble cocktail table
- 2 Regency lion candlesticks
- 1 white Italian console (18th century)
- 1 bronze rhino (Gideon)

**Tangible personal property belonging jointly to Robert D. Wallick and Ann Day Wallick**

- Louis XV mantle
- 1 Louis XVI dining room table
- green and brown classical screen
- Aubusson rug
- 1 18th Century French tapestry
- 1998 Ford Taurus
- golf cart

```
                            )
DISTRICT OF COLUMBIA        )    ss.
                            )
```

On this 30th day of August, 1999, before me personally came ROBERT D. WALLICK, to me known and known to me to be the individual described in, and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

                                              _____Virginia Smith_____
                                                   Notary Public

My Commission expires:   My Commission Expires January 14, 2002

```
                            )
DISTRICT OF COLUMBIA        )    ss.
                            )
```

On this 30th day of August, 1999, before me personally came ANN D. WALLICK, to me known and known to me to be the individual described in, and who executed the foregoing instrument, and she duly acknowledge to me that she executed the same.

                                              _____Virginia Smith_____
                                                   Notary Public

My Commission expires:   My Commission Expires January 14, 2002